UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EARTHLINK, INC. | : | |
| | : | |
| v. | : | Misc. 07-0015-ML |
| | : | |
| DAVID R. PAOLO | : | |

**NOTICE OF OPINION AND ORDER**

On March 31, 2008, the United States District Court for the Northern District of Georgia filed an Opinion and Order denying the Motion of defendant David R. Paolo under Rule 60 Fed. R. Civ. Proc. for relief from the Judgment entered against him in favor of plaintiff Earthlink, Inc., in civil action No. 1:02-CV-1921-JOF. Said Judgment was registered in the District of Rhode Island to commence the above-captioned action. A true copy of said Opinion and Order is attached hereto.

Earthlink, Inc.
By Its Attorney,

/s/ John D. Deacon, Jr.
John D. Deacon, Jr., #2226
72 Pine Street
Providence, RI 02903
(401)272-8080
(401)272-8195
email: jdeacon@lmkbw.com

**CERTIFICATION**

I hereby certify that on April 25, 2008, a copy of the foregoing Motion of Earthlink, Inc. to Adjudge in Contempt and for Enforcement of Subpoenas was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by e-mail or to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Anthony F. Cottone cottonelaw@cox.net

/s/ John D. Deacon, Jr.

F:\John D\Earthlink\PLEADINGS\NOTICE OPINION ORDER.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EARTHLINK, INC., | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 1:02-CV-1921-JOF |
| LOG ON AMERICA, INC., et al., | : | |
| Defendants. | : | |

**OPINION AND ORDER**

This matter is before the court on Defendant's first motion for relief from judgment [48].

## I. Background

### A. Procedural History

Plaintiff, EarthLink, Inc., filed suit against Defendants, Log On America, Inc. ("LOA"), David R. Paolo, and John Does 1-10, on July 11, 2002, alleging numerous causes of action including federal RICO violations, violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030, *et seq*., violation of Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, *et seq*., Georgia civil RICO violations, breach of contract, tortious interference with contract, tortious interference with business relations, slander, slander per se, libel per quod, libel per se, conversion, misappropriation, violation of Georgia Computer

Systems Protection Act, O.C.G.A. §§ 16-9-90, *et seq*, unfair competition, unjust enrichment, conspiracy, attorney's fees under O.C.G.A. § 13-6-11, and punitive damages under O.C.G.A. § 51-12-5.1.

Although the instant motion does not address the merits of the underlying litigation, for the purposes of context, the court notes that EarthLink is an Internet service provider. David Paolo was the founder and President, Chairman and CEO of Log On America until its demise through bankruptcy. On February 14, 2002, EarthLink and Log on America entered into a contract whereby EarthLink would acquire Log on America's residential dial-up subscribers. Payment under the contract was provided for through complex calculations reflecting the number of former Log on America subscribers who remained in service with EarthLink. The contract also had various non-compete and non-solicitation provisions and the prohibition of the unilateral press releases. For reasons the parties dispute and that are not relevant to the instant motion, EarthLink claimed that Mr. Paolo violated numerous provisions of the Agreement. EarthLink eventually filed suit in this court in the complaint described above.

A day after Plaintiff filed its complaint, Log on America filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Delaware. That filing stayed EarthLink's action against Log on America. Defendant Paolo, however, proceeded *pro se* in the litigation and filed an answer to the complaint. The bankruptcy stay

did not apply to Mr. Paolo. Although the court addresses the procedural history of the case in greater detail below, the court notes that on July 15, 2005, Plaintiff filed a status report with the court indicating that it had been unable to locate Mr. Paolo in order to prepare a joint pretrial order. In an order dated September 12, 2005, the court directed Mr. Paolo to notify the court of his current address. Having no response to that order, the court struck Mr. Paolo's pleadings and instructed Plaintiff to file a motion for entry of default judgment.

In an order dated March 24, 2006, the court granted the motion for entry of default and instructed Plaintiff to file a motion for summary judgment as to damages. Mr. Paolo did not respond to Plaintiff's motion for summary judgment, and the court granted the motion in an order dated June 30, 2006. In that order, the court directed Mr. Paolo to pay Plaintiff $226,952 in damages and $100,000 in punitive damages. The court further instructed Plaintiff to file a motion for attorney's fees. On November 7, 2006, the court directed Mr. Paolo to pay Plaintiff an additional $48,628.75 for attorney's fees. On November 6, 2007, a day less than a year later, Mr. Paolo filed the instant motion for relief from judgment.

**B. Contentions**

Pursuant to various provisions of Federal Rule of Civil Procedure 60(b), Mr. Paolo argues that the court should reopen the November 7, 2006 and December 11, 2006 judgments entered against him. Mr. Paolo contends that Plaintiff's counsel was aware of his home address at all times during the litigation and that Plaintiff's counsel misled the



AO 72A

court by saying they were unable to contact Mr. Paolo. Mr. Paolo avers that he "reasonably relied" on opposing counsel's "actual knowledge" of his whereabouts and that Plaintiff's counsel engaged in "fraud" on the court such that the judgments should be vacated. Mr. Paolo also asserts that the court does not have personal jurisdiction over him and the judgments should be vacated for that reason pursuant to Rule 60(b)(4).

Plaintiff responds that it properly used the most recent address provided by Mr. Paolo in attempting to locate him and that any difficulty in locating Mr. Paolo was caused by his failure to keep the court apprised of his most recent address. Plaintiff contends that it was not attempting to mislead the court by stating that it was unable to locate Mr. Paolo because it used the most recent address provided by Mr. Paolo in attempts to contact him. Plaintiff further asserts that Mr. Paolo waived his personal jurisdiction arguments through his *pro se* appearances and responses to the court in this action. In any event, Plaintiff argues that a Georgia court has jurisdiction over Mr. Paolo by virtue of his entering into a contract and conducting business with EarthLink.



AO 72A

## II. Discussion

### A. Personal Jurisdiction

Pursuant to his motion under Rule 60(b)(4), Mr. Paolo contends that the court should vacate its judgments because the court does not have jurisdiction over him in Georgia. *See Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 924 (11th Cir. 2007) ("Rule 60(b)(4) allows a litigant – even one who does not initially appear – to collaterally attack a judgment on the ground that it is void due to lack of personal jurisdiction."). Mr. Paolo contends that he has never resided in Georgia or derived income as a result of any business activity in the state of Georgia. *See* Paolo Aff., ¶ 4. He further states that the contract at issue was signed in Rhode Island and he "never appeared in Georgia with respect to its negotiation or performance." *Id.*

The court will presume for the purposes of this discussion that Mr. Paolo did not waive his personal jurisdiction arguments. When an evidentiary hearing is not held, the

> plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. Finally, where the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff.

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996).



AO 72A

A federal court must have both statutory and constitutional authority to assert jurisdiction over a defendant. *See McGee v. International Life Ins. Co.*, 355 U.S. 220 (1957). In analyzing personal jurisdiction, the court must first determine whether a defendant is subject to jurisdiction under Georgia's long arm statute. If so, the court must then determine if an assertion of jurisdiction would be constitutional. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

The Georgia Long Arm statute permits a Georgia court to exercise personal jurisdiction over a nonresident if he "[t]ransacts any business within this state." *See* O.C.G.A. § 9-10-91(1). Prior to 2005, Georgia courts had interpreted subsection (1) of the Georgia Long Arm statute with certain limitations, such as applying it only to contract cases or requiring the physical presence of the defendant in Georgia. However, in *Innovative Clinical & Consulting Service, LLC v. First National Bank of Ames*, 279 Ga. 672 (2005), the Supreme Court of Georgia held that this section of the Long Arm statute contained no explicit limiting conditions, and "a literal construction grants Georgia courts the unlimited authority to exercise personal jurisdiction over a nonresident who transacts any business in this State." *Id.* at 675 (to the extent permitted by due process). "We hereby overrule all prior cases that fail to accord the appropriate breadth to the construction of the 'transacting any business' language of O.C.G.A. § 9-10-91(1)." *Id.* at 676.

Since the Supreme Court's decision in *Innovative Clinical*, Georgia courts have explained that

> [j]urisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*See Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 518 (2006). This analysis mimics the minimum contacts and fairness analysis required under the Due Process Clause of the United States Constitution.[1]

---

[1]The court considers two factors when determining whether asserting personal jurisdiction over nonresident defendants would comport with due process. First, the court must decide whether the defendant has "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985). To satisfy minimum contacts for the purposes of specific jurisdiction, the contacts must (1) be related to plaintiff's cause of action; (2) involve some act of "purposeful availment" by the defendant of the privileges of the forum; and (3) be such that the defendant should reasonably anticipate being "haled into court there." *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994). If the court finds sufficient minimum contacts, it must then determine whether the exercise of personal jurisdiction would offend the "traditional conception of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

In determining the "fairness and reasonableness of a forum's exercise of jurisdiction, a court must consider, among other things, the burden on the defendant, the interests of the forum . . ., and the plaintiff's interest in obtaining relief." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1551 (11th Cir. 1993) (internal quotations and citations omitted). Although there may be some burden in asking a defendant to litigate this case in a foreign state, the Eleventh Circuit has noted that "modern methods of transportation and communication" have greatly reduced such burdens. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 632 (11th Cir. 1996).



AO 72A

The basis for personal jurisdiction here would be the contract between Mr. Paolo and EarthLink, a Georgia business. All of Plaintiff's causes of action arise out of that contractual relationship which itself calls for the application of Georgia law. The fact that Mr. Paolo "never appeared" in Georgia to negotiate the contract does not preclude jurisdiction under the terms of *Innovative Clinical*. While Mr. Paolo states that he never went to Georgia to negotiate the contract, he does not testify as to what contacts he had with Georgia parties during the course of negotiations. Mr. Paolo obviously had to be in contact with individuals in Georgia to negotiate the contract, and by whatever means that contact was had – through telephone or e-mail or any alternative means – was sufficient for the purposes of the Georgia Long Arm statute. Mr. Paolo purposefully entered into a significant contractual relationship with a Georgia corporation. The court finds this satisfies the first two elements of the Long Arm statute. In terms of the due process analysis, the court finds that it does not violate traditional notions of fair play and substantial justice under these circumstances to permit jurisdiction over a nonresident who entered into a significant contractual agreement with a resident of the forum state. Now that the court has determined it may exercise personal jurisdiction over Mr. Paolo, it turns to the arguments concerning his address.

**B. History of Address Information for David Paolo**

The address originally given on the summons issued for David Paolo on July 11, 2002, was 50 Tomahawk, Cranston, Rhode Island. A Rhode Island constable attempted service at that address and was informed it was a different "David Paolo" that lived there. The constable searched tax records and found a listing for David Paolo at 18 Deer Run, Scituate, Rhode Island 02857. The constable made service on David R. Paolo at that address and was told by Mr. Paolo that the "other" David Paolo was his cousin. *See* Civil Action No. 02-CV-1921, Docket Entry 6.

From that point forward in the litigation, the address used for Mr. Paolo on all certificates of service was the Deer Run address. *See*, *e.g.*, Joint Preliminary Planning Report, at 6 (listing Deer Run as address for Plaintiff and noting "[t]his is the only possible address EarthLink has for Paolo, who did not include any contact information whatsoever in his Answer. EarthLink does not know whether this address is valid – it is the one at which Paolo was served with EarthLink's Complaint").

However, on December 30, 2003, Mr. Paolo filed a reply to Plaintiff's motion for partial summary judgment. In that reply, Mr. Paolo listed his address on the certificate of service as "PO Box 5682 Providence, Rhode Island 02903." As is the practice in the Clerk's Office of the Northern District of Georgia for parties proceeding *pro se*, Mr. Paolo's address was then changed in the court's docket. Thus, when the court issued its next order on

June 30, 2004, that order was sent to Mr. Paolo at his Post Office Box address. In that order, the court denied Plaintiff's motion for partial summary judgment. The court also noted, however, that the parties were in related litigation in the bankruptcy proceedings in Delaware. Therefore, the court stayed the litigation until April 1, 2005. The court further directed:

> the parties to report to the court on the status of the breach of contract litigation before the United States Bankruptcy Court for the District of Delaware. The court also noted that Defendant Paolo is proceeding *pro se* in this litigation. Should Defendant Paolo acquire counsel at any time before April 1, 2005, that counsel should file a notice of appearance with the court and move for a scheduling conference with the court.

*Id.* at 9.

The next action in the case occurred on April 8, 2005, when counsel for Plaintiff submitted the requested status report. That report was served on Mr. Paolo at his Post Office Box. Two months later, the court issued an order finding that the remaining corporate mismanagement adversarial action in the bankruptcy proceedings was not sufficiently intertwined with the instant litigation so as to warrant a continuation of the stay. The court therefore directed the parties to file motions for summary judgment or a pretrial order. *See* Order, dated June 16, 2005, at 2-3. The service of this order was marked returned as undeliverable, signaling the first problem the court had with locating Mr. Paolo.

Shortly thereafter, EarthLink filed another status report stating "Plaintiff has been unable to contact the Defendant David R. Paolo (the "Defendant") via the only contact

information it has for him, and the Plaintiff is aware that the copy of the Order sent to the Defendant's mailing address was returned to the Court as undeliverable." *See* Status Report, Docket Entry 29, at 1. In response to this information, the court issued an order on September 12, 2005 directing Mr. Paolo to inform the court of his current address and reminding him of his obligations under the court's Local Rules to keep the court apprised of his current address. The court also directed that the order be served on the Bankruptcy Trustee for Log On America in hopes of locating Mr. Paolo through that individual.

Like all other pleadings, this order was also returned to the Clerk of the Court as undeliverable. As a result, on January 5, 2006, the court instructed Plaintiff to file a motion for default judgment and the resulting judgments were entered against Mr. Paolo as described above.

In the instant motion for relief from judgment, Mr. Paolo now testifies that he only had a Post Office Box in Providence, Rhode Island for a short period of time during 2003, "but did not inform the court of any change of address." *See* Paolo Aff., ¶ 12. "As noted, my residence address was at all relevant times (and presently is) located at 18 Deer Run in Scituate, Rhode Island." *Id.* Mr. Paolo further states that the parties settled their claims in the bankruptcy proceedings on May 25, 2004. *Id.*, ¶ 14.

> The last document I received pertaining to [the] above action was EarthLink's motion for partial summary judgment in November 2003, which, as noted, I received at my personal residence in Rhode Island and to which I responded. I was then informed that the motion for partial summary judgment had been



AO 72A

> denied. I did not receive any other document pertaining to this case until I was informed in 2007 that certain judgments against me had been recorded in the United States District Court for the District of Rhode Island.

*Id.*, ¶ 15.

"I was aware that PO Box 5682 in Providence, Rhode Island had expired well prior to January 2005, although I received no notice from the Post Office as to its expiration, nor did I receive any notice from the Post Office that any mail of any kind had been returned 'undeliverable.'" *Id.*, ¶ 16.

> I simply did not believe that the above action was being prosecuted by EarthLink inasmuch as: (1) EarthLink's motion for partial summary judgment had been denied; (2) EarthLink paid LOA's bankruptcy Trustee $50,000 to settle the contract claim based upon the same Agreement at issue here; and (3) although not a lawyer, I could not conceive of any basis upon which this Court would have personal jurisdiction over me. Also, I saw no reason to inform this court of any change of address as my address had not changed and I was not aware that my Post Office box, which appeared on one certificate of service I filed in 2003, was being relied upon as my current address by either the court or opposing counsel, since both the court and counsel had actual knowledge of my residence address and communicated with me at that address.

*Id.*, ¶ 17.

Counsel for EarthLink testifies that once EarthLink received the Post Office Box certificate of service, it was simply unaware of where Mr. Paolo was living. In fact, Tyler Brown, counsel for EarthLink, testified that "following the entry of the Judgments, EarthLink was not sure whether Paolo lived at the Deer Run Address because the land records that were searched to find Paolo [in order to execute the judgments] indicated that

the deed to the property had been transferred several times recently, including through transfers to Paolo's sister and to a family limited partnership." *See* Brown Aff., ¶ 17.

John D. Deacon, who was retained by Plaintiff as counsel to execute the Georgia judgments in Rhode Island, testified that he attempted to have Mr. Paolo and his wife, Kathleen, served with subpoenas at the Deer Run address, but Mrs. Paolo refused to allow service of the subpoenas. *See* Deacon Aff., ¶¶ 6-7. Although Mr. Deacon eventually arranged with Mr. Anthony Cottone (Mr. Paolo's current counsel) to have the subpoenas served on him, no response has been made to them. *Id.*, ¶¶ 8-10.

**B. Relevant Rules of Civil Procedure**

Federal Rule of Civil Procedure 5(b)(2)(B) provides that service under Rule 5(a) is made by "[m]ailing a copy to the last known address of the person served. Service by mail is complete upon mailing." *Id.* (rule changed by amendment on December 1, 2007, with this provision now located at Fed. R. Civ. P. 5(b)(2)(C)). As of December 30, 2003, the "last known address" for Mr. Paolo was the Post Office Box. Mr. Paolo somehow argues that because the mail sent to that address was returned to the court as undeliverable, that address is no longer the "last known address." However, it was Mr. Paolo who informed the court and the parties through his certificate of service that his address was the Post Office Box. The court and Plaintiff properly concluded from this notice that the Deer Run address was no longer Mr. Paolo's address. *See also J.D. Pharmaceutical Distributors, Inc. v. Save-On*

*Drugs & Cosmetics Corp.*, 893 F.2d 1201, 1208 (11th Cir. 1990) (holding that under Rule 5(b), "adequate constructive service may be made by mailing papers to a party's last known address").

As Mr. Paolo recognizes, Local Rule 83.1(D)(3) provides:

> Counsel and parties appearing *pro se* shall have, in all cases, an affirmative duty to notify the clerk's office by letter of any change in address and/or telephone number. A failure to keep the clerk's office so informed which causes a delay or otherwise affects the management of a civil case shall constitute grounds for dismissal without prejudice or entry of a judgment by default.

*Id.*; *see also* Local Rule 41.2(C).

Mr. Paolo theorizes that "the Rule is simply inapplicable as Mr. Paolo had not changed addresses." However, as the court explained above, under Rule 5(b)(2)(B), Mr. Paolo had changed his address. Based on an analysis of Rule 5(b) and this court's Local Rules, the court finds that it was Mr. Paolo's failure to keep the court apprised of his current address that led to the difficulties in locating him.

**C. "Fraud" or "Misrepresentation"**

Mr. Paolo, however, also contends that Plaintiff's counsel perpetrated a fraud on the court by not attempting to locate Mr. Paolo at his previous Deer Run address. A court may set aside the entry of default "for good cause," *see* Federal Rule of Civil Procedure 55(c), and may set aside a default judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect," or for "any other reason justifying relief from the judgment." *See*

Federal Rule of Civil Procedure 60(b)(1), (6); *see also African Methodist Episcopal Church, Inc. v. Ward*, 185 F.3d 1201, 1202-03 (11th Cir. 1999). A court may consider factors such as whether the party's behavior was "willful," the party acted "promptly to vacate the default once counsel was obtained," "a meritorious defense was asserted," and whether the non-defaulting party would "suffer [] prejudice if the default was vacated." *See, e.g., USA Flea Market, LLC v. EVMC Real Estate Consultants, Inc.*, 2007 WL 2615887 (11th Cir. Sept. 12, 2007) (unpublished decision).

The gravamen of Mr. Paolo's various Rule 60(b) motions is that his conduct should be excused because Plaintiff's counsel perpetrated a fraud on the court in stating they could not locate Plaintiff. The confusion in this case is precisely the reason the court's Local Rules put the burden on the *pro se* party of keeping the court apprised of his address. It is not the court's – nor Plaintiff's – burden to seek out a defendant. When a defendant files a document noting that his address is a Post Office Box, defendant's address is updated by the Clerk of the Court. This is the address both the court and the parties are entitled to rely on in serving the party. Furthermore, for the reasons stated below, even fully crediting Mr. Paolo's affidavit, the court finds that it is not clear at all from the record that Mr. Paolo was unaware that the court was attempting to locate him.

As an initial matter, the court notes that Mr. Paolo cannot contend that he was not aware that the Clerk of the Court had changed his address to the Post Office Box. The court

issued an order on June 30, 2004. By that time, Mr. Paolo's address had been changed in the court's records to the Post Office Box. That order (unlike the numerous others filed after June 16, 2005), was not returned to the court. That means that Mr. Paolo received the court's June 30, 2004 order at his Post Office Box and was aware this was the address the court was using to communicate with him.

Mr. Paolo, himself, obliquely refers to this in his affidavit. He testifies that the "last document I received pertaining to [the] above action was EarthLink's motion for partial summary judgment in November of 2003, which, as noted, I received at my personal residence in Rhode Island and to which I responded. I was then informed that the motion for partial summary judgment had been denied." *See* Paolo Aff., ¶ 15. Mr. Paolo does not explain how he was "informed" of the denial of the motion for partial summary judgment. Mr. Paolo was not represented by counsel at that time who could have "informed" him. The only conclusion the court can draw – despite the use of passive voice – is that Mr. Paolo did, indeed, receive the court's June 30, 2004 order denying Plaintiff's motion for partial summary judgment which was sent to him at his Post Office Box.

Further, that order directed "the parties" – which would include Mr. Paolo – to provide a status report to the court on the litigation. Mr. Paolo failed to do so. Had Mr. Paolo followed this instruction and provided an update to the court on April 1, 2005, perhaps the court and Plaintiff would have had reliable contact information for Mr. Paolo.

Moreover, it is not even clear to the court that Deer Run has been the residence of Mr. Paolo throughout the entirety of this litigation. In the affidavit filed in support of his motion for relief from judgment, Mr. Paolo testifies, "I currently reside at 18 Deer Run in Scituate, Rhode Island and have resided at that address continuously from the commencement of the above action to the present." *See* Paolo Aff., ¶ 2; ¶ 11 ("I did not include an address or other contact information on the signature line of either of my two submissions to this Court objecting to EarthLink's motion for partial summary judgment. However, in the Certificate of Service attached to my December 30 filing, my name was typed as follows: "David R. Paolo, PO Box 5682, Providence, RI 02903."); ¶ 12 ("I maintained a Post Office Box in Providence for a short period during 2003, but did not inform the court of any change of address. As noted, my residence address was at all relevant times (and presently is) located at 18 Deer Run in Scituate, Rhode Island.").

However, the Bankruptcy Court in Delaware has different information. The court takes judicial notice that Log On America's Chapter 7 bankruptcy proceeding is filed under Case No. 02-12022 (MFW) in the United States Bankruptcy Court for the District of Delaware. Michael B. Joseph, the Chapter 7 Trustee for Log On America, has filed numerous adversarial actions within the bankruptcy proceeding. One of those adversarial actions is raised against Mr. Paolo. *See* Adversary Action No. 04-54137. On July 9, 2004, Mr. Joseph filed a complaint in that adversarial action listing Mr. Paolo's primary residence

as 85 Woodland Avenue, Cranston, Rhode Island 02920, and Mr. Paolo admitted that this was his address. *See* Cmplt., ¶ 6 and Answer, ¶ 6 ("Defendants admit that David R. Paolo is an adult individual with a residence located at the address stated in the caption . . . "). Unlike the current action where Mr. Paolo had been proceeding *pro se*, Mr. Paolo has been represented in the adversarial action by Mitchell Kaplan, Paul Bonanno, and Gregg Shapiro of Choate, Hall & Stewart in Boston, Massachusetts. Neither Mr. Paolo nor his counsel informed the bankruptcy court that his address was Deer Run.

Next, to support his contention that Plaintiff's counsel knew all along where he lived, Mr. Paolo states that Plaintiff's counsel served a subpoena on Mr. Paolo at his Deer Run address in the bankruptcy litigation. That subpoena, however, was served on December 18, 2003, ***prior*** to Mr. Paolo's submission in the instant litigation of a pleading with a certificate of service on December 30, 2003, listing a Post Office Box. (The court notes that Mr. Paolo's motion fails to mention the specific date of this subpoena, instead simply arguing that EarthLink knew where to find Mr. Paolo in "December of 2003." *See* Motion, at 7. Of course, the actual date of that subpoena is highly relevant to the matter here. Had EarthLink issued that subpoena after Mr. Paolo had submitted his Post Office Box certificate of service, Mr. Paolo might have had support for an argument that Plaintiff should have known he was at the Deer Run address, but that, of course, is not what happened).

Finally, the court could be puzzled by why Mr. Paolo did not mention in his motion that the court made additional efforts to locate Mr. Paolo before entering default against him. In the court's order of September 12, 2005, the court recounted that Plaintiff had not been able to locate Mr. Paolo and that several orders of the court had been returned to the Clerk of the Court as undeliverable. In a further attempt to locate Mr. Paolo, the court directed the Clerk of the Court to serve a copy of the September 12, 2005 order on the bankruptcy trustee for Log On America, knowing that Log On America was involved in adversarial proceedings against Mr. Paolo and might have better information on his whereabouts.

The court's docket reflects that the order was transmitted to "Trustee, Raymond Lemisch, Adelman, Lavine, Gold & Levin, PC, 919 N. Market Street, Suite 710, Wilmington, DE 19801." Again, the court takes judicial notice of the docket and pleadings in Log On America's bankruptcy proceedings to confirm that Mr. Lemisch, who at the time represented Michael Joseph, Chapter 7 trustee, did receive the court's order. Docket Entry 417 of Case No. 02-12022 contains billing records submitted for payment by Mr. Lemisch's firm. Those records reflect that on September 21, 2005, Mr. Lemisch reviewed the court's order and met with his colleague, William Hinchman, concerning the order. Alan Moldoff of the firm then met with Mr. Hinchman to discuss the litigation. Mr. Moldoff also reviewed the court's order.

The court further notes that during this time frame, all parties were working toward reaching a negotiated settlement in the adversarial matter. At the very least, Mr. Moldoff, as counsel for Mr. Joseph, was in nearly daily contact with attorneys for Mr. Paolo as reflected in the billing records. While there is no evidence in the billing records that attorneys for Mr. Joseph specifically discussed this matter with Mr. Paolo's attorneys, it defies logic that the parties would enter into a settlement agreement regarding the payment of money by Mr. Paolo knowing that Mr. Paolo was in danger of having a default entered against him in the Georgia action without discussing that information.

Again, the court can attempt to read a bit between the lines of Mr. Paolo's carefully crafted affidavit. There, he states: "I did not receive any other document pertaining to this case until I was informed in 2007 that certain judgments against me had been recorded in the United States District Court for the District of Rhode Island." *Id.*, ¶ 15. The fact that Mr. Paolo "did not receive any other document pertaining to this case," of course, allows for the possibility that Mr. Paolo was told by his counsel in the bankruptcy proceedings that the court in the Northern District of Georgia was attempting to locate him.

For the clarity of the record, the court also notes other relevant timing and procedural information. As Plaintiff points out, Plaintiff attempted to execute judgments against Mr. Paolo in court in Rhode Island in February 2007. (Mr. Paolo's affidavit, carefully again, does not specify when he learned of these judgments. Rather, it simply says he was

informed "in 2007 that certain judgments against me" had been recorded in federal court in Rhode Island.) Attorney Anthony Cottone entered an appearance on behalf of Mr. Paolo in one of those proceedings on July 9, 2007 and the other on September 5, 2007. Mr. Paolo's attorney, however, did not attempt to lift the default in this litigation at that time, as one might expect. Instead, Mr. Paolo's attorney waited an additional four months, until one day before the expiration of a year, to file the instant motion for relief from judgment pursuant to Rule 60(b).

Finally, the court also notes the odd formulation used by Mr. Paolo in his reply to his motion to explain what he would have done had he known that the proceedings in this case were continuing. Mr. Paolo argues that if he "had been served with EarthLink's pleadings in this case, he would have gauged EarthLink's prosecution of this action differently." *See* Reply, at 6. It is difficult for the court to discern precisely what this means. It is clearly not a declaration that he would have attempted to defend himself in this litigation or he would have opposed the court's entry of default judgment against him. It is clearly not an argument that would be sufficient reason for the court to lift default. For these reasons, the court finds that EarthLink did not engage in any fraud or misrepresentation on the court which would justify the vacatur of the default judgments under Rule 60(b).[2]

[2]Mr. Paolo also states at points in his motion that he was proceeding *pro se* and did not understand the significance of various events in the litigation. The court notes, however, that despite the naiveté expressed in his affidavit, Mr. Paolo is an experienced litigant. Prior to its bankruptcy problems, Log On America (at the time Mr. Paolo was its President and

Thus, to return to the analysis called for in Rules 55(c) and 60(b), the court finds there was no "mistake, inadvertence, surprise, or excusable neglect" by Mr. Paolo that would warrant lifting of the default. Nor does the court find there is "any other reason justifying relief from the judgment." While an inference of willfulness could certainly be drawn from the record for Mr. Paolo's failure to participate in this litigation until Plaintiff attempted to execute the monetary judgments against Mr. Paolo in Rhode Island, the court does not rely on such a conclusion in denying Mr. Paolo's motion to vacate the judgment. The court does find that in one significant aspect, Mr. Paolo's failure to act was "willful." In its June 30, 2004 order, which Mr. Paolo did receive, the court directed "the parties" to provide a status update no later than April 1, 2005. While Plaintiff did respond to this order, Mr. Paolo never did. As the court indicated above, had Mr. Paolo responded, much of the trouble that followed may have been avoided.

Significantly, the court also notes that Mr. Paolo did not "promptly" move to vacate the judgments once he retained counsel. As the court outlined above, Mr. Paolo was represented by counsel in Rhode Island with respect to Plaintiff's attempts to execute the

---

CEO) filed suit against Promethean Asset Management, LLC; HFTP Investment LLC; Fisher Capital LTD; Wingate Capital, LTD; Citadel Limited Partnership and Marshall Capital Management, Inc., in the United States District Court for the Southern District of New York, Civil Action No. 00-CV-6218, on August 18, 2000. In addition to the various bankruptcy actions (happening at the same time as this litigation) in which Mr. Paolo was represented by counsel, Messrs. Kaplan and Shapiro also represented Mr. Paolo in a securities class action case styled as *Scritchfield v. Log On America*, Civil Action No. 01-CV-550-S (D.R.I.).

judgments there for at least four months prior to filing of the instant motion to vacate. The court finds that such a time delay is not "prompt."

It is possible – although not entirely clear to the court – that Mr. Paolo might have been able to raise defenses against the contractual causes of action filed by EarthLink. However, default was entered against Mr. Paolo on the tort actions. *See* Order, dated June 30, 2006 (discussing slander, slander per se, libel per quod, and libel per se). In his motion, Mr. Paolo does not outline any defenses he might have had to those causes of action, but rather focuses on the breach of contract causes of action. *See* Motion, at 13-15. Thus, the court is not able to determine whether Mr. Paolo would have had any meritorious defenses to EarthLink's tort causes of action.[3] Finally, the court finds that EarthLink would suffer substantial prejudice were the judgments vacated. The judgments were entered nearly a year ago at the same time EarthLink was entering into settlement agreements with Mr. Paolo and other related individuals and entities in the bankruptcy litigation. Further, EarthLink had already taken steps to execute those judgments. For the foregoing reasons, the court finds that there is no good cause to vacate the judgment.

---

[3]Mr. Paolo does note that the contract required the parties to resolve disputes under the auspices of the American Arbitration Association, but Mr. Paolo does not argue that the tort causes of action were required to be resolved in a similar manner.

## III. Conclusion

The court DENIES Defendant's first motion for relief from judgment [48].

**IT IS SO ORDERED** this 31st day of March 2008.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE